UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

August 9, 2021

LETTER TO COUNSEL

    RE:    *John G. v. Kijakazi*[1]
              Civil No. DLB-20-284

Dear Counsel:

       On February 3, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for Disability Insurance Benefits. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. Pl.'s Mem., ECF 14; Def.'s Mem., ECF 15; Pl.'s Reply, ECF 16. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the denial if the SSA employed correct legal standards and made findings supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

       Plaintiff filed his claim for benefits on February 17, 2017, alleging an onset date of September 14, 2016. Administrative Transcript ("Tr.") 159–65. The SSA denied his claim initially and on reconsideration. Tr. 70, 79–80. An Administrative Law Judge ("ALJ") held a hearing on November 28, 2018. Tr. 44–69. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 31–39. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1–7; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. *Office of the Commissioner*, SOC. SEC. ADMIN., www.ssa.gov/org/coss.htm (last visited July 21, 2021). Pursuant to the last sentence of 42 U.S.C. § 405(g), actions brought under that Section "survive notwithstanding any change in person occupying the office of the Commissioner of Social Security." Substitution of the successor as the party in interest is automatic. Fed. R. Civ. P. 25(d).

*John G. v. Kijakazi*
Civil No. DLB-20-284
August 9, 2021
Page 2

The ALJ found plaintiff severely impaired by "bilateral ankle osteoarthritis, status post bilateral ankle reconstruction/fusion, and obesity." Tr. 33. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except occasionally climb, [have] occasional exposure to vibrations, and occasional exposure to hazardous conditions, including unprotected heights and moving machinery.

Tr. 34. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform his past relevant work as a groundskeeper but could perform other jobs existing in the national economy in significant numbers. Tr. 38. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 39.

On appeal, plaintiff challenges the ALJ's RFC analysis. He primarily argues that the ALJ failed to perform a function-by-function assessment or adequately explain her conclusion with respect to plaintiff's alleged need to elevate his legs several times a day. Pl.'s Mem.; Pl.'s Reply. Both of plaintiff's major arguments turn on the same facts. Consequently, I consider them together. Plaintiff also argues the ALJ erroneously evaluated his activities of daily living ("ADLs") and inappropriately credited treatment notes in which physicians noted plaintiff was doing well. *Id.* Because plaintiff's arguments are without merit, I affirm the SSA's decision.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *3 (July 2, 1996). In making the assessment, the ALJ determines "the capacity [an individual] possesses despite the limitations caused by impairments." *Britt v. Saul*, --- F. App'x ----, 2021 WL 2181704, at *5 (4th Cir. 2021) (citing 20 C.F.R. § 404.1545(a)(1)). The Fourth Circuit "ha[s] rejected a per se rule requiring remand when the [ALJ] does not perform an explicit function-by-function analysis." *Id.* (citation omitted) (quotation marks omitted). Rather, "[m]eaningful review is frustrated—and remand necessary—only where '[the Court] [is] unable to fathom the [] rationale in relation to evidence in the record." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (quotation marks omitted).

Relatedly, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p) (internal quotation marks omitted). "In other words, the ALJ must both identify evidence that supports [her] conclusion and 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). "[I]t is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). Indeed, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

*John G. v. Kijakazi*
Civil No. DLB-20-284
August 9, 2021
Page 3

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

In this case, the ALJ first noted plaintiff's allegation that he "need[ed] to elevate his legs for periods of approximately half an hour throughout the day to mitigate his ankle pain and swelling." Tr. 35. The ALJ then concluded that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 35. The ALJ, proceeding chronologically, thoroughly discussed the treatment notes that stemmed from plaintiff's surgeries, *see* Tr. 34–37, including notes in which, *inter alia*, plaintiff exhibited only mild swelling, Tr. 319; plaintiff's physician opined plaintiff's left ankle was "clinically healed," Tr. 319; plaintiff reported he had "some swelling on occasion especially near the end of the day," Tr. 321; radiographic evidence revealed stable hardware, Tr. 76, 78, 80; plaintiff indicated only some swelling and minimal pain and exhibited no tenderness in his left ankle, Tr. 453; and plaintiff had reported to his doctor that his left ankle was doing "exceptionally well" about a year after his surgery, Tr. 454. As to plaintiff's right ankle, the surgery had taken place approximately one month before plaintiff's hearing. *See* Tr. 44–69, 753–69. The ALJ also discussed a note from plaintiff's own physician in which the physician noted that plaintiff could not return to his past work and that plaintiff "would need a lighter duty line of work." Tr. 37, 453. The ALJ then concluded that plaintiff's "surgical follow up appointments consistently showed that he was recovering well from surgery," and that plaintiff "reported that he was doing well and experiencing only minimal ankle pain after his left ankle fusion." Tr. 36.

Although plaintiff argues that the ALJ failed to consider his "<u>actual</u>" limitations with respect to his need to elevate his legs, *see* Pl.'s Mem. 16 (emphasis in original), plaintiff himself explained that his alleged need to elevate his legs was a consequence of pain and swelling, *see, e.g.*, Tr. 56. Thus, each time the ALJ discussed the extent of plaintiff's pain and swelling, she discussed the alleged basis for elevating his legs numerous times throughout the day. *See* Tr. 34–37. Moreover, the ALJ did not conclude that plaintiff would not need to elevate his legs at all throughout the day. In the decision, she noted that "[t]he vocational expert . . . testified that the available jobs would remain even if the claimant were required to elevate his legs on regularly scheduled breaks and lunch." Tr. 38. Thus, the ALJ found that although plaintiff may need to elevate his legs, plaintiff would be able to adequately elevate his legs during normal breaks when confined to light work. The ALJ based this conclusion on a thorough discussion of plaintiff's treatment notes, including notes in which plaintiff reported little to no pain and his physician discussed only mild swelling after plaintiff's initial recovery from the surgery.

Further, the treatment notes plaintiff cites as evidence of his need to elevate his leg relate to the period immediately following plaintiff's surgeries, which took place on September 14, 2016, and October 17, 2018. *See* Pl.'s Mem. 17 (citing Tr. 324, which is a note from September 20, 2016, or six days after plaintiff's first surgery; Tr. 325, which is a note from September 27, 2016, or 13 days after plaintiff's first surgery; Tr. 327, which is a note from November 1, 2016, or about seven weeks after plaintiff's first surgery; Tr. 330, which is a note from November 15, 2016, or about two months after plaintiff's surgery; Tr. 331, which is a note from November 22, 2016,

which is a note from about ten weeks after plaintiff's surgery; Tr. 321, which is a note from about five months after plaintiff's left ankle surgery and in which his physician wrote that plaintiff was "very happy with his hindfoot and ankle fusion . . . [and] having some swelling on occasion especially near the end of the day" but had "no tenderness" and was "clinically healed"). The ALJ and plaintiff's representative, moreover, discussed the temporal aspect of plaintiff's claim at the hearing:

> ALJ:  Also, based on your opening my review [sic] of this file shows that [plaintiff] was doing exceptionally well after his left ankle fusion.  And the doctor I show [sic] recommended a lighter duty of work, not his past work.  And as you know, the evaluation doesn't end with past work, but that's what I saw in my review.  Is there documentation of elevation necessity somewhere in this file that I can look at?
> [Attorney]: I would point mostly, Judge, to the—well initially there was a recommendation for leg elevation at—upon the discharge from the initial surgery.
> ALJ: Which would make sense postoperative recovery.
> [Attorney]: And that was 4F, page 69 of 85.  Dr. Carls, who is the primary orthopedic surgeon who's taking care of [plaintiff] has made references through his treatment of continued leg elevation.  For example, Judge, November 1st, 2016[,] I—it may be in 3F, he says to continue elevating the foot whenever possible.  I believe that's in 3F.  Also, in 3F on February 14, 2017, which is about five months post op, Exhibit 3F, page 6 of 20 he says we discussed elevation of the foot.  I can tell you, Judge, that that's as particular as it gets.  I—
> ALJ:  Okay.

Tr. 50–51.

Plaintiff fashions his argument around the ALJ's failure to perform a function-by-function assessment or explain her RFC determination, but in effect plaintiff asks the Court to reweigh the evidence and upset the ALJ's findings as to the consistency of plaintiff's complaints with the available medical evidence.  This Court cannot reweigh or resolve conflicts in evidence.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").  Further, even if the ALJ erred with respect to the function-by-function assessment, remand is warranted "only where '[the Court] [is] unable to fathom the [] rationale in relation to evidence in the record." *Britt*, 2021 WL 2181704, at *5 (internal citation omitted).  I am able to discern the ALJ's rationale in this case and determine that the ALJ's decision is supported by substantial evidence.  The ALJ may not have emphasized plaintiff's need to elevate his legs in the decision, but she thoroughly discussed the purported basis for that limitation and explained her conclusions with respect to that basis.  Similarly, I disagree with plaintiff that the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusions.  *See Woods*, 888 F.3d at 694.  The ALJ formulated an RFC assessment based on her review of the treatment notes, including those in which plaintiff's physician—and plaintiff himself—indicated that plaintiff had occasional swelling and that he was often pain free in the months following his initial recovery.  The ALJ was not required to fully credit plaintiff's statements about the extent of

*John G. v. Kijakazi*
Civil No. DLB-20-284
August 9, 2021
Page 5

his need to elevate his legs on these facts. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) ("Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence."). Remand is therefore unwarranted.

Plaintiff also challenges the ALJ's discussion of his ADLs and argues that the ALJ failed to explain how his ADLs conflicted with his alleged symptoms or demonstrated that he could get through an eight-hour workday. Pl.'s Mem. 12–15. Although plaintiff is correct that an ALJ cannot consider the type of a claimant's ADLs without also considering the extent of those activities, *see Woods*, 888 F.3d at 694, I find any potential error in this case harmless. First, the ALJ in this case expressly considered the extent of plaintiff's ADLs, noting that plaintiff could "prepare meals on a daily basis working for 30 minutes to an hour at a time," and that plaintiff "reported spending approximately two hours a day doing housework including laundry, loading a dishwasher, and cleaning his home." Tr. 36. Second, and as discussed above, the vast majority of the RFC analysis references objective medical findings and even plaintiff's own statements to providers that he often had little or no pain and only occasional swelling. *See* Tr. 34–37. Thus, even if the ALJ erred in finding that plaintiff's ADLs supported the conclusion that plaintiff could engage in light work, the ALJ's analysis nonetheless withstands review because the ALJ's decision is otherwise supported by substantial evidence.

Finally, plaintiff argues that the ALJ gave improper weight to treatment notes in which plaintiff's physicians observed that plaintiff was "doing well." Pl.'s Mem. 15–16 (citing *Kellough v. Heckler*, 785 F.2d 1147, 1153–54 (4th Cir. 1986)). *Kellough*, however, is distinguishable from this case. In *Kellough*, the plaintiff had a degenerative heart condition for which she underwent surgery, and the Fourth Circuit held that the SSA's determination that the plaintiff could engage in her past relevant work was unsupported by substantial evidence. 785 F.2d at 1152–54. The SSA based its conclusion as to the plaintiff's ability to engage in her past relevant work on, in part, "an attending physician's note which from time to time . . . indicated that Kellough 'felt well,' was 'free of cardiac symptoms,' had no 'dyspnea,' and 'was performing floor exercises including situps.'" *Id.* The Fourth Circuit found that "[t]he meaning of the physician's notes [were] most ambiguous." *Id.* Additionally, the Court found that the notes were taken out of context, citing one note in which the physician wrote that the plaintiff felt well "just one month before she was hospitalized for open heart surgery." *Id.* The plaintiff's "normal activity" at the time the notes were generated, therefore, included "no household chores," "very little lifting or prolonged standing," and no work. *Id.* Further, "[t]he notes themselves ma[d]e no mention of the range of activity that Kellough could perform, nor [did] they establish that Kellough's rheumatic heart disease, a degenerative ailment, had been 'cured' by surgery." *Id.*

In the instant case, the ALJ cited treatment notes from plaintiff's surgeon, who indicated in the notes that plaintiff was doing well after he initially recovered from his left ankle surgery. *See* Tr. 36 ("The claimant's ankle impairments required surgical intervention, but his post[-]surgical follow up appointments consistently showed that he was recovering well from surgery and his imaging found stable alignment and hardware.") (citing Exhibits 3F, 4F, and 12F, or

treatment notes from plaintiff's orthopedic surgeon and the hospital where plaintiff received his surgery). However, unlike in *Kellough*, where the notes at issue were ambiguous, *see* 785 F.2d at 1153, here the treatment notes contain considerable detail, including details about repeated imaging on plaintiff's joints, plaintiff's ability to bear weight on the joints, the amount of swelling plaintiff was experiencing, and plaintiff's range of motion, *see* discussion of the treatment notes *supra*. These details bear on plaintiff's allegation that he needed to elevate his legs numerous times throughout the day because the notes implicate the extent of plaintiff's pain and swelling. Additionally, unlike in *Kellough*, plaintiff's physician specifically discussed the possibility of plaintiff's return to lighter work than plaintiff had done in the past. Tr. 453. Although physicians are not occupational experts and the determination of a claimant's residual exertional level is reserved for the Commissioner, *see* 20 C.F.R. § 404.1527(d), it is clear from these notes that plaintiff's own physician did not consider plaintiff's impairment totally debilitating from a medical standpoint, even as the physician noted plaintiff's post-surgical status was inconsistent with the strenuous work plaintiff had done in the past. And, unlike in *Kellough*, where the physician made no statements about Kellough's recovery from surgery, *see* 785 F.2d at 1153, here plaintiff's physician clearly noted on January 5, 2017, that plaintiff was "doing very well" and was "clinically healed" after his left ankle surgery. Tr. 319. Finally, while the ALJ in *Kellough* took the treatment notes out of context, citing the plaintiff's good health just one month prior to a hospitalization for a heart surgery, *see* 785 F.2d at 1153, here the ALJ analyzed the treatment notes in the context of plaintiff's ankle surgery. Her chronological analysis reveals that she merely disagreed with plaintiff as to his continuing need to keep his ankle repeatedly elevated more than two years after plaintiff's left ankle surgery, and she found that he was still in the process of the initial recovery from his right ankle surgery. Thus, I disagree with plaintiff that *Kellough* requires remand in this case.

Ultimately, the law confines my review to whether the ALJ employed correct legal standards and made factual findings supported by substantial evidence. *Craig*, 76 F.3d at 589. Inherently limited in scope, substantial evidence review asks only whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). The inquiry is therefore not whether I agree with the ALJ's conclusions but whether "more than a mere scintilla" of evidence supports them. *See Hays*, 907 F.2d at 1456. On the record before me, I find the ALJ applied correct legal standards and made findings supported by substantial evidence.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 14, is denied, and defendant's motion for summary judgment, ECF 15, is granted. The SSA's judgment is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

*John G. v. Kijakazi*
Civil No. DLB-20-284
August 9, 2021
Page 7

                                              Deborah L. Boardman
                                              United States District Judge